Our final case for this morning is Rashaad Imani v. William Pollard. Mr. Legrand. Madam Chief Judge, and may it please the court. It is one thing to hold that every defendant, rich or poor, has a right to the assistance of counsel, and quite another to say that a state may compel a defendant to accept a lawyer he doesn't want. Recognizing the inestimable worth of free choice, Feretta held that a defendant who knowingly and voluntarily chooses to go it alone and is confident to make that choice must be allowed to represent himself at trial. The state of Wisconsin uses a four-part test to determine if a defendant has validly chosen to represent himself. Three of those prongs at least seem to align with Feretta's holding that a defendant knowingly chooses to represent himself if he's aware of the danger of self-representation. Wisconsin's fourth prong, though, deliberateness, is on its face contrary to Feretta. Feretta does not say or even imply that a defendant has to make a request that is, quote, deliberate. Habeas is warranted in precisely this situation, as rare as it may be, where a state imposes a new and heightened burden on a defendant's exercise of a constitutional right. So Mr. Armani's petition should be granted. So if we look at the Supreme Court's decision in Godinez, which then gives rise to a lot of activity, you know, both in Wisconsin and in this court, it seems that there are two things that legitimately can be looked at by the state, and I guess we need to see whether that's what happened here. One, is the defendant competent to stand trial? And Godinez says that is just a unified standard, whether it's for pleading guilty, standing trial, waiving the right to counsel, there's one competence standard. Then there's also the quality of the waiver and the waiver to the Sixth Amendment right to counsel. It's got to be intelligent and voluntary. And there, the Godinez court seems to think that the state courts, they use the word more elaborate, and the Wisconsin court understands more elaborate to mean higher, and this court has some language about that. But if you could explain where you think the state has discretion with these two criteria, competence and the quality of the waiver, I'll just lump that. And where it needs to stop, you know, where the Supreme Court insists that the Ferretta right be respected, that would be helpful. Yes, Your Honor, I think we need to look no further than Ferretta, Godinez, and Indiana v. Edwards to see the discretion and the bounds of that discretion. You're absolutely right. Godinez suggests that states can provide more elaborate standards for exercising the right to represent themselves. I don't know whether more elaborate means, you know, more factually rich or whether more elaborate means we can demand, you know, that you have an IQ of 120, not an IQ of 85. Right, and to be honest, Your Honor, that's not completely clear. It's not completely settled. Some courts believe that the standard basically means you can raise the bar for the standard to stand trial. So it's not just rational understanding of the factual, of the nature of the proceedings against you. And then if you raise that bar, you can also raise the bar to match that standard for representing yourself at trial. But it still has to be unified. Some courts believe that. Now, this court in Brooks v. McCautry didn't take that position, and we recognize that. But again, so there is discretion. Does it mean higher IQ? Not exactly clear. That's not clearly established. We recognize that. But what is clearly established is that you cannot consider a defendant's legal abilities. That is categorically excluded. That's in all three of those cases, Ferreira, Godinez, and Indiana v. Edwards. So the state may raise the bar and say you have to have, I think Indiana provides an excellent example, you can't suffer from a severe mental disability or any mental disability at all, I think a state could say. But you can't, the state has no discretion to say that you have to have some legal skills. You have to be competent legally to represent yourself. And I think that's where the bounds are, at least clearly established by the Supreme Court precedent. So that's a clearly established, aside from the fuzziness, because, of course, fuzziness is one of those areas where ties go to the state. But clear is the quality of one's self-representation, adeptness in the legal system. So what is it here with the state court, the Supreme Court of Wisconsin, that strays beyond the clearly established boundaries? Well, the court asked a number of questions, and I say the court, I mean the Wisconsin Supreme Court, because it adopted the record as found by the trial court. But it basically asked Mr. Armani to prove that he's competent to represent himself at trial. And a few of those questions asked in terms of his previous experience with the criminal courts. Mr. Armani said he had been in criminal court before, at least on five other occasions. The court deemed that to be observational experience and essentially held it against him that he had never previously before represented himself in a criminal trial. So do you think this language about being hasty or rash or disgruntled or all the other words that they used about Mr. Armani goes to the competence point or the knowing quality of the waiver? Well, Your Honor, if I'm being completely honest, we came into this appeal thinking that this deliberateness language went to the voluntary nature of the inquiry, because that's not in the four-part inquiry. But the state has taken the position, both in the district court and on the appeal, that deliberateness means knowingly. But deliberateness means thoughtfulness, they seem to be saying. I think that's right. It's as if the Wisconsin Supreme Court was applying a waiting period requirement, as Wisconsin and other states do for other certain personal decisions. Yes, Your Honor, I think that's exactly right. But there's a simple solution to that, and that is you recess the hearing and you come back. You say, Mr. Defendant, I think you're making a really foolish decision. You have the right to make that foolish decision, but I think you'd be a lot better off if you think about this overnight or come back next week and we'll talk about it. I didn't see anywhere in this record that Mr. Armani actually ever withdrew his request. That's what a trial judge has to do in this situation, is either get a good waiver of counsel or get the defendant, persuade the defendant to withdraw his request. Otherwise, this is flatly contrary to Feretta, and you have the courts treating the exercise of a right as something that is simply a privilege that the trial judge has the right to deny. I think that's right. And, Your Honor, Feretta clearly states the issue resolved by the Supreme Court in that case as whether a state may impose upon a defendant a counsel. That is the clear issue decided by Feretta, and it draws very narrow bounds around the exceptions that might apply, and deliberately simply is not one of those. And I think you're right in terms of the thoughtfulness or time, the temporal aspect of this analysis. If the court had taken a step back and said, Mr. Armani, I really want you to think about this. Are you sure you still want to represent yourself? He could have either reaffirmed his request or withdrew it, but the court simply denied it. And so I think we have to accept the fact that Mr. Armani re-urged his request by constantly trying to interject and made it clear that he absolutely wanted to represent himself. And he obviously claimed that he had thought about it. What is the significance of the trial court's invitation to renew the request? So the Wisconsin Supreme Court looks at that issue in terms of whether or not Mr. Armani knowingly chose to represent himself. There are a couple of problems with that issue. One, there's a futility problem. Mr. Armani never re-urged his request. That's true, but I think, as Judge Hamilton just mentioned, if you accept that he never withdrew it, there's no need to re-urge it. But more importantly, or secondly at least, the request was denied because he was not competent in part and denied in another part because it wasn't too close to the trial. So there's no reason to believe that the request would be granted as the trial grew closer. But, again, if competence was an issue and legal competence at that, where was Mr. Armani going to get the legal first-year trial experience in the 28 days between the suppression hearing and the trial? Mr. LeGrand, let me ask you. The interplay of the timing is something that any trial judge can understand here. Would the trial judge here have been justified in telling Mr. Armani, in effect, yes, okay, you can represent yourself, but the trial date holds. I'm not going to, you know, this is late in the game. We've already been through three counsel. The judge is understandably impatient with this fellow. But you're going to have to be ready on this schedule. That would be okay, right? Absolutely, Your Honor. And the record makes clear that Mr. Armani never requested a continuance. And our view is that the record is abundantly clear. He says, if I'm allowed to represent myself, the trial, that will stand as is. And I believe that's at 42. Yeah, that's just about a quote. Your Honor, I see I'm out of time. Thank you very much. Well, thank you very much. We'll see if we need to hear from you further. Mr. Whitworth. Mr. Whitworth.  Let me ask, to start off, is there any indication in the record that the defendant asked for a continuance on the set trial date when he requested to represent himself? There is no indication that he requested a continuance. As a matter of fact, he said he'd be ready, didn't he? Yes, he did. The only indication about worrying about the time setting and so on was one raised by the judge himself. That's correct. The judge wasn't concerned about the time. It would interfere with his scheduled trial. That's correct. He already had – this was a two-defendant trial. His cousin, Rosega, was also proceeding pro se. So the judge, understandably, was concerned. What do you mean understandably? Yeah. What's understandable about it? He had already scheduled. He didn't want to change his schedule? Well, it's a complex case to begin with. You have two – But nobody asked for a continuance. All he had to do was proceed, do what the defendant asked him to do, and things would have just marched along. That's correct. What he was afraid of, I think, was that the actions of the defendant during the trial might interfere with the schedule. Can you read that into it? I don't believe that you can read that into it. That would be speculation. I can't say what the judge's motives were. I thought he said something along those lines. Okay. Didn't the state, along those lines, say, gee, you know, if he's pro se, he isn't going to know what he's doing. It's going to be harder to coordinate this too. Not that I think that's a legitimate ground, by the way, but I thought that was what the state's lawyer said. I don't know if that was you or somebody else. No, that is what the state's lawyer said. I would agree with that. That's interesting. You think those are reasonable grounds to deny him his right to represent himself? Certainly not as reasonable as the grounds that they were actually denied when the request was denied. Well, the request was denied. I mean, this is essentially a factual case. I mean, it's based on the trial. Go ahead. No, it's not. What were the grounds? Okay. The defendant requested to proceed pro se, and on the heels of losing a nearly dispositive motion, the court determined that it was a hasty request. Why is that pertinent at all? I mean, I would be surprised if, I mean, I've made hasty decisions in my life. You've probably made a few. Most of us have. I would like to think that doesn't mean that you're not competent to decide, that the hasty decision isn't what you really meant to do. And as Judge Hamilton says, there's a very easy remedy, which is to say we're going to recess for two hours, and then you can come back and tell me what you think. Well, I think that the waiver of the right to counsel is very important, and courts have a weighty, significant responsibility to ensure that the waiver is annoying. No, this judge, it is weighty, but this judge was undertaking an inquiry to disqualify this fellow. If you're trying to see if this is a sound decision and a valid waiver, you've got to work at it in a case like this. Instead, this judge was pouncing on any potential signal of a problem to say, oh, then this can't be a valid waiver, hence I'm going to deny your request to represent yourself, a request that was never withdrawn. I've got to say, I don't think I've ever seen so fundamental a misunderstanding of FRERETA as is indicated in the state court's decisions in this case, which seem to confuse. There's plenty of room to disagree with FRERETA, and it's difficult for trial judges. I've been there. But to respect it, you've got to treat it as a right and not a privilege. I would bring the court's focus back to the transcript in the trial court, and I realize that that's exactly where you're at right now, but I would emphasize a few additional points in that trial record. Again, the request does come on the heels of losing an important motion. It's always. I mean, you know somebody who's happy is never going to waive counsel, right? I've made that point. The point that I haven't made, however, is that the judge twice says that he's denying the request at this time and invites the defendant to renew his request at a later time, understanding that a cooling-off period, if you will, an opportunity for him to reflect on his circumstances. He has just lost an important motion. This witness is going to be able to testify to the identification of him. He's the person who was carjacked at the laundromat. But we don't worry about prejudice. We're talking about a structural error. And as Judge Hamilton says, there's plenty of ground to wonder whether FRERETA is the greatest thing for the criminal justice system, but it's the Supreme Court's statement about an important privilege that people have when they're accused of crime. So, you know, I'm not sure that the judge just saying, maybe I'll let you do some form of hybrid representation. He's already said, Mr. Amani's already said, it's okay with me to have whatever his name was, lawyer, as standby counsel, and the judge brushes that off. It's actually a very sophisticated discussion on Mr. Amani's part, to the extent the judge isn't interrupting him, about his desire to represent himself. His cousin is going to represent himself. He knows this is possible. Right. I was hoping that I wasn't going to have to do this, but I had the risk of throwing the Wisconsin Supreme Court under the bus here. Please take a look at what the trial court actually did on the issue of competency. It never actually determined that he was not competent. It made some inquiry regarding competency issues, but the Wisconsin Supreme Court said that the court made an implicit competency determination. I don't think that it's quite correct to say that the trial court was looking for any grounds on which it could disqualify. Well, usually you're telling us to look at the most recent, the last decision of the state court, correct? Right. And I have to say, I smiled when I read the dissent say, under this standard, it's hard to see how any defendant would ever be deemed competent to represent himself for the first time. Right? I'm familiar with the dissent, correct. Yeah. Any rebuttal to that? It seems to me unanswerable. It's based on the circumstances of the request. Now, MSRPS refers to the circumstances of the request, says that under the facts and circumstances is the person making a knowing and intelligent waiver. And this court's own decisions, including United States v. Hill, say that the obligation of the court is to determine that the person knows their rights and doesn't make hasty decisions. But on this record, it's very hard for me to escape the idea that what the state court was looking for was his ability to function, I'll just say, as a lawyer or close to the way a lawyer would function in the trial. And it's ignoring the Supreme Court's repeated statements that the competence has to be the competence to waive. It's not the competence to be a lawyer. And I just don't see that here. Right. I'm focusing primarily on the knowing and intelligent waiver portion as opposed to competence. Well, in the knowing, there's nothing to suggest that he's unaware of what lawyers can do. There's nothing to suggest that he's, you know, he says I think I can do this for myself just as well. He's, you know, he's. We basically have two rationales. One, he's not going to be able to be as, he won't do as well as a lawyer would. And two, this is a hasty decision. Yes. And, right, and neither of those is consistent with Feretta. No, I do believe it's consistent with Feretta because I don't believe that a hasty decision can be a decision that is knowing and intelligent. How can that possibly be? You can make a quick decision that would be knowing and intelligent. What's the difference between quick and hasty? Well, that's exactly what I'm getting to. His hasty would be one that a person is not aware of all of the consequences and understanding the things that one is giving up. A hasty decision is one that is made impulsively, reflexively, and the record supports that determination, particularly on habeas. I don't see anywhere in Feretta or any place else from the U.S. Supreme Court anyway that distinction. Well, again, this is. Particularly where if that is a correct rationale, then a little passage of time should lead the defendant to withdraw his request upon further reflection, right? Correct, yes. But in this case, the court did clearly deny the request. I don't believe that it was actually on the table. He would have needed to renew his request at a later time. Exactly. And he was invited to do so by the trial court. Essentially a cooling off period, an opportunity for him to come back the next day and make the request. But Mr. LeGrand points out that the judge's concerns about the trial date were only going to get worse as the trial date approaches. And he wasn't going to get any better. Probably not a lot better about the nuances of evidence law. Background was what it was. The judge seemed skeptical about his reading at the college level, but he does have a 10th grade education, which is not so bad. That's the age at which most states, you know, cease the requirement for mandatory. Well, it might also depend on what college he's educated in. Well, that's true. That's true. The request, again, I'd ask the court to focus on the facts in the case. And this court's own decision in the United States v. Hill, which very carefully goes through what it takes to make a knowing and intelligent involuntary waiver. It rejects a checklist of providing, you know, all of the rights that one is giving up. But it does say that the person must have an understanding of their rights and not make a hasty decision. And here the word hasty is actually used by the Supreme Court, and I believe that it's supported by the facts in the case. And it's not just United States v. Hill. It's other cases relying on Hill from this court's own jurisprudence. I think if this court were to grant habeas relief in this case, it would need to square that with United States v. Hill and its other cases. All right. Thank you very much. Thank you very much. Your time expired, Mr. Grant. If you want one more minute, I will give it to you. Thank you. I'd just like to make one quick point about Hill because that came up repeatedly during the state's argument. Hill is entirely consistent with our position. Hill stands for the unremarkable proposition, Your Honor, that a trial court has a responsibility to inform the defendant of the dangers of self-representation. But there is no litany of warnings that a trial court must recite. So a minimal amount of information communicated by the trial court about the risk of representing yourself is sufficient for a defendant to make a knowing choice. So Hill does not cut against our argument whatsoever. Now, it does use the word hasty, but hasty as being used by the Wisconsin Supreme Court was being used as a term of art to mean not deliberate. That's not at all how Hill uses the word hasty. So, I mean, I think the state puts a lot of weight on Hill, but Hill is completely consistent with the argument. Feretto makes clear that a state just can't hail a person to its courts and force a lawyer upon them. Wasn't Hill a case, if I'm remembering correctly, in which a defendant had waived, the court accepted the waiver, he went to trial, and then claimed his waiver had been invalid? Yes, Your Honor. And we cautioned you have to be careful not to overdo the warnings, in essence, so that the, if I'm remembering the case correctly. That's exactly right. And I think there's a difference between respecting someone's choice and not allowing that choice to be effectuated. Thank you, Your Honor. Thank you. And you as well served by appointment of the court. Yes, Your Honor. We appreciate your service very much for your client and for the court. And, of course, thank you to the state.